UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JORGE SEGURA MARTINEZ,

                    Petitioner,

        v.

ICE FIELD OFFICE DIRECTOR, et
al.,

                    Respondents.

CASE NO. C26-1027JLR

ORDER

## I.   INTRODUCTION

Before the court is Petitioner Jorge Segura Martinez's petition for writ of habeas corpus under 28 U.S.C. § 2241.  (Pet. (Dkt. # 3); Traverse (Dkt. # 9).)  The Government[1]

---

[1] The Federal Respondent is the Immigration and Customs Enforcement ("ICE") Field Office Director (referenced herein as the "Government").  The proper respondent, however, for a § 2241 petition is "the person who has custody over" the petitioner.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35 (2004) (citing 28 U.S.C. §§ 2242, 2243) (internal quotation marks omitted); *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024) (reversing grant of federal habeas relief where the immigration detainee's direct custodian was not named as respondent).  Because Petitioner represents that he is currently detained at the Northwest ICE Processing Center, the

ORDER - 1

opposes the petition. (Return (Dkt. # 6).) The court has considered the petition, the parties' submissions, the relevant portions of the record, and the applicable law. Being fully advised, the court GRANTS the petition in part.

## II. BACKGROUND

Petitioner is a citizen of Mexico who entered the United States at an unknown location, on an unknown date, and without being admitted or paroled. (Soraghan Decl. (Dkt. # 7) ¶ 3.) On three occasions in June 2002, United States Border Patrol ("USBP") encountered Petitioner at or near Douglas, Arizona, and offered him voluntary return to Mexico. (*Id*. ¶¶ 4-6 (representing that on June 26, 2002; June 28, 2002; and June 29, 2002, USBP encountered Petitioner and offered him voluntary return).) On December 20, 2025, ICE officers encountered Petitioner at a vehicle stop in Everett, Washington; determined that he was a noncitizen present in the United States without being admitted or paroled; and detained him. (*Id*. ¶ 7.) The Government issued Petitioner a Notice to Appear; placed him in removal proceedings in the Tacoma, Washington, Immigration Court; and transported him to the Northwest ICE Processing Center, where he has since remained. (*Id*. ¶¶ 7, 12; *see also* Wong Decl. (Dkt. # 8), ¶ 2, Ex. 2 (Notice to Appear).) On March 16, 2026, an Immigration Judge ("IJ") held a merits hearing for Petitioner, denied his requested relief, and ordered him removed to Mexico. (Soraghan Decl. ¶ 8; Wong Decl. ¶ 3, Ex. 3 (IJ Order).) On April 13, 2026, Petitioner appealed the IJ's

---

proper respondent for this action is the individual in charge of that facility. Accordingly, the Clerk is DIRECTED to name Bruce Scott, Warden of the Northwest ICE Processing Center, as a Respondent in this action.

ORDER - 2

decision to the Board of Immigration Appeals ("BIA") and that appeal remains pending. (Soraghan Decl. ¶ 11.)  On April 3, 2026, Petitioner filed the instant habeas petition under 8 U.S.C. § 2241 seeking his immediate release from federal custody or, in the alternative, a bond hearing.  (*See generally* Pet.)  The petition is now fully briefed and ripe for the court's consideration.

### III.   ANALYSIS

Habeas petitioners must provide by preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c); *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner asserts that his detention is unlawful because the Government has held him in custody since December 20, 2025, following the entry of a final order of removal; the Government has not provided a constitutionally adequate bond hearing; and his continued detention does not comport with due process requirement.  (*See generally* Traverse.)  The Government asserts that the court should deny Petitioner habeas relief because he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2); due process does not require a court-ordered bond hearing; and he failed to exhaust his administrative remedies regarding his bond hearing.  (*See generally* Pet.)  The court considers each argument in turn.

**A.   Petitioner is Entitled to a Bond Hearing Under *Banda*.**

Petitioner first asserts that his continued detention is unlawful because the Government has held him in federal custody since December 20, 2025, without any meaningful determination justifying his continued detention.  (Traverse at 7.)  "Courts in

ORDER - 3

this circuit have an obligation to give a liberal construction to the filings of pro se litigants, especially when they are civil rights claims by [incarcerated persons]." *Blaisdell v. Frappiea*, 729 F.3d 1237, 1241 (9th Cir. 2013) (citation omitted). The court liberally construes Petitioner's claim as one arguing that his detention has become so unreasonably prolonged that the Constitution requires a bond hearing. The Government, in pertinent part, contends that Petitioner is not entitled to release because he is "subject to mandatory detention while his removal proceedings remain pending." (Return at 4 (citing 8 U.S.C. § 1225(b)(2)).) The Government further argues that, even if the court were to apply the *Banda* test, Petitioner's continued detention under § 1225(b) does not violate due process. (Return at 5 (citing *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111-12 (W.D. Wash. 2019)).)

The Government considers Petitioner to be subject to detention under § 1225. (*Id.* at 4-5.) Petitioner does not provide an argument as to which section of the Immigration Nationality Act ("INA") governs his detention, and he does not appear to challenge the statutory basis for his detention. (*See generally* Pet.; Traverse.) Rather, the substance of Petitioner's claim is that his detention has become constitutionally prolonged. (*See generally* Traverse.) The court therefore assumes Petitioner is subject to § 1225 without considering the merits of the Government's argument and considers his prolonged detention claim under that framework.

"Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention" under § 1225. *Toktosunov v. Wamsley*, No. C25-1724TL, 2025 WL 3492858, at *3 (W.D. Wash. Dec.

ORDER - 4

5, 2025).  Courts in this district have adopted the *Banda* test to assess when such detention violates due process.  *See, e.g., Hong v. Mayorkas*, C20-01784LK, 2022 WL 1078627, at *5 (W.D. Wash. Apr. 11, 2022) (citing *Banda*, 385 F. Supp. 3d at 1106)).  Under *Banda*, a court evaluates the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the Government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id*.

The *Banda* court further clarified that, at such hearings, the burden of proof rests with the Government, which must satisfy the clear and convincing evidence standard. *Banda*, 385 F. Supp. 3d at 1107.  In so concluding the *Banda* court relied on the Ninth Circuit's analysis in *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011) and determined that when at stake is freedom from prolonged detention, the Government has this burden—regardless of the stage of proceedings.  *Id*.

Here, (1) the Government has detained Petitioner for nearly six months (Soraghan Decl. ¶¶ 7, 12); Petitioner's future lengthy detention is likely as his appeal remains pending (*Id*. ¶ 11); Petitioner is imprisoned; (4) the Government concedes that Petitioner has not intentionally delayed removal proceedings (Return at 8); (5) Petitioner does not identify any delays occasioned by the Government (*see generally* Traverse); and (6) there is already a final order of removal (*see generally* IJ Order).  All factors either weigh in Petitioner's favor or are neutral.  *Dovlatov v. Hernandez*, C26-0826JNW, 2026 WL 1030454, at *3 (W.D. Wash. Apr. 16, 2026) (finding petitioner's detention had become

unconstitutionally prolonged with four factors favoring petitioner and two factors neutral); *Kumar v. Hermosillo*, C26-0389JNW, 2026 WL 523276, at *4 (W.D. Wash. Feb. 25, 2026) (same). Thus, the court finds that Petitioner's detention has become unreasonable, "and that due process requires the Government to provide him with a bond hearing." *Banda*, 385 F. Supp. 3d at 1120; *see Toktosunov*, 2025 WL 3492858, at *6. Furthermore, this bond hearing must comply with the procedural requirements set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).

**B.     Petitioner is Not Entitled to Immediate Release.**

Petitioner also asserts that, under the Due Process Clause, the court must order his immediate release. (*See, e.g.*, Traverse at 7.) Petitioner, however, is mistaken.

In *Zadvydas v. Davis*, the Supreme Court stated that, pursuant to § 1231(a), "[w]hen [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." 533 U.S. 678, 682 (2001). During the 90-day removal period, the Government "shall detain" the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Following the conclusion of the 90-day removal period, the Government may continue to detain certain noncitizens. *Id*. § 1231(a)(6). A noncitizen ordered removed who is inadmissible, removable, or "who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" *Zadvydas*, 533 U.S. at 688

ORDER - 6

(citation omitted).  The "presumptively reasonable" period for detention following a removal order is six months.  *Id.* at 701.

Here, the IJ entered a final order of removal on March 16, 2026.  (*See generally* IJ Order.)  Thus, because fewer than six months have elapsed since entry of the final order of removal, the Government's detention of Petitioner is presumptively reasonable.  *Zadvydas*, 533 U.S. at 701.  Accordingly, the court declines to order his immediate release without prejudice to him refiling a new habeas action seeking immediate release under *Zadvydas* as circumstances warrant.

**C.    Petitioner Need Not Exhaust His Administrative Remedies.**

Finally, the Government asserts that the court should decline to consider Petitioner's habeas petition seeking a bond hearing without first exhausting his administrative remedies.  (Return at 9-10.)  This argument, however, is without merit.

The exhaustion requirement for habeas claims brought under 28 U.S.C. § 2241 is prudential, rather than jurisdictional.  *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (citation omitted).  In the Ninth Circuit, courts may require prudential exhaustion when:

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

*Id.* (quoting *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)).  In the Ninth Circuit, "[w]hen a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the

ORDER - 7

petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citation omitted). A court, however, may waive the prudential exhaustion requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

Here, the court determines that exhaustion is excused due to risk of irreparable injury to Petitioner. In so concluding, the court adopts the reasoning of the Honorable Tiffany M. Cartwright in *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025) who held that a petitioner subject to potentially seven months of detention while awaiting appeal "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Rodriguez*, 779 F. 3d at 1254 (internal quotation marks and citation omitted). Accordingly, this court "follows the vast majority of other cases which have waived exhaustion based on irreparable injury when an individual has been detained for months without a bond hearing, and where several additional months may pass before the BIA renders a decision on a pending appeal." *Id*. (internal quotation marks and citation omitted). Thus, the court declines to deny Petitioner a bond hearing on this ground.

## IV.   CONCLUSION

Accordingly, the court ORDERS as follows:

(1) Petitioner's petition for a writ of habeas corpus is GRANTED in part (Dkt. # 3);

ORDER - 8

(2) Within **14 days of the date of this order**, the Government shall provide Petitioner an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011);

(3) The Clerk is DIRECTED to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

Dated this 29th day of May, 2026.

JAMES L. ROBART
United States District Judge

ORDER - 9